Calling case 15-4087, United States of America v. Jason Fowler. Oral argument not to exceed 15 minutes per side. Catherine Adenaro for the appellant. May it please the court, Catherine Adenaro on behalf of the appellant, Jason Fowler. I would like to reserve two minutes for rebuttal. You may. Thank you. Jason Fowler was just 29 years old when he was sentenced to 348 months in prison. He is now seeking a sentencing reduction of just over five years based on a subsequent amendment to the drug guidelines. That reduction would reduce his outdate from 2037 to 2032 and put him in his late 50s at the time of his release. There are two issues before the court today. First, whether the district court erred as a matter of law in finding that Mr. Fowler was not eligible for a sentencing reduction based on Amendment 782. And second, whether the district court abused its discretion in denying his motion for a reduction based on public safety. The answer to both of these questions is yes. I will focus my arguments today on the first issue and rest on the briefs as to the abuse of discretion. Did you get our questions about some of these underlying sentencing calculations? I did, Your Honor. Would you mind responding to that? Well, I'd be interested, yes. So to answer the first question the court asked is, did the district court err in grouping the drug offenses and the murder offenses? The answer to that is yes, and I can walk through the analysis at the court. So if the answer is yes, is there anything we can do about it? In this procedural posture, no. What options are available? So if we have an error, do you think the error is prejudicial? And the best answer I can give, not intending to be coy, but the best answer I can give is maybe. What's the reason you're hesitating? Well, what I'm asking this court to do, because I think the dispute in this case boils down to what is the definition of the applicable guideline range under the unique circumstances in this case? And depending on what the court's answer is to that question, there may be a prejudicial error, in which case Mr. Fowler would pursue perhaps a 2255, maybe for ineffective assistance to counsel under Melina Martinez, or something along those sorts. 2255 might be the remedy on this point. Correct. Also, if the grouping error were an error, and if there were some way to get a remand, would it not leave the judge open to go either direction? I'm not sure I... Well, as a generality, and I say we're jumping the big hurdle here, the judge is supposed to get the guideline range right before the judge does anything else. So if the judge gets the guideline range wrong, and we were to say go back, usually he's back to ground zero, he can say now I've got the right range, and I can go through my mechanics, and I can go up, down, or sideways. I'm not sure that's correct in the procedural posture that we're in, because we're... SB 582 doesn't let us do that? That's correct. Okay, so you gave a great answer, which is 2255, ineffective assistance, separate proceeding. Is there any other avenue? I mean, is there any other way you can think about doing this, just out of curiosity? I have to say I can't think of one either, but I just am curious, given your expertise. I don't know of one, and again, I think it depends... And even if we remanded, you'd be skeptical, the remand based on this appeal and this posture, that we could even correct the error in this remand, that we'd be probably creating more errors, I see. That's correct. And how about, just last question, because I'm going to ask AUSA this, but I mean, what if the government consents to something? I mean, even if you remand, let's say we remand, is the government even in a position in the posture of this 3582 to consent to reopening issues that are beyond 3582, in this exception? Or you don't think so? I guess it would depend on what the answer is, and how the court's going to... Because I think the big hurdle that we haven't talked about yet is whether he's going to be eligible for a reduction under 3582. If the court finds that the applicable guideline range hasn't changed, then that's sort of, I think, the big dispute here. Well, let's assume every one of my questions is premised on a lousy assumption that your current appeal doesn't go anywhere. Okay. That's just for the sake of argument. Then you would say there's not much that can be done with a remand, no matter what the government says. Correct. Okay. So let's go back to the more issue before us, is explain in succinct terms why this sentence that he actually is serving is based on the reduced drug guideline as opposed to being based on the murder-robbery convictions. Correct. We're asking the court to define his applicable guideline range as to count three separately from his total guideline range for two reasons. First, because the district court did not use the total guideline range when imposing the sentence, and second, because the district court uniquely crafted his sentence to give effect to 2D1.1. The district court did not use the total guideline range when imposing the sentence, which is evidenced in the transcript at the resentencing hearing, when defense counsel is arguing that the total offense level should be a 37 instead of a 43, and the court responded, quote, it makes very little difference practically because of what I intend to do. The court then imposed a sentence based on the statutory maximum for counts one, two, and four, and then used 2D1.1 to impose a sentence of 188 months on count three. So defense counsel at 44-16 at the resentencing was setting out the applicable guideline range as to count three, knowing that the statutory maximum was at play for the other counts. And what is the effect, I mean, across the board, and I don't have an answer to this, of the fact that he didn't really sentence him to 188 months because he chose to run, what, 80 months of that consecutive. So he didn't say I'm concurrent, rather. He didn't say I'm varying or departing, but your man did not get 240 plus 188. He got 240 plus 108. That's correct, and I think it's really important that we compare what the district court did at the original sentencing with the sentences that he imposed on remand at the resentencing because I think it's telling that the district court was intending to give effect to 2D1.1 in the way that he structured the sentence. So with the first time, the district court imposed 240 for the RICO counts and a 276 concurrent for count three, and then 120 months for count four, which was the firearm count. At the resentencing, the court changed and imposed 240 months on the RICO count, 188 months was clearly based on 2D1.1, and structured it differently, decided that this count would be partially run concurrent and partially run consecutive, and then chose count four to run concurrent. So if the court did not want to give effect to 2D1.1, it could have done a couple things. It could have run the 188 months concurrent entirely, then we wouldn't be here, or it could have chose to run the 120 months for the firearms consecutive instead of splitting the current and consecutive sentence on count three. Maybe I missed this, but in the math that you just gave, the 120 on the firearm must have been all consecutive. It disappeared because the math wouldn't add up otherwise. That's a good point. The district court, in its order denying Mr. Fowler's motion for a reduction, made an error, and at page 72.13 said that that 120 months was consecutive. It was not. It was concurrent. Right, because otherwise the math wouldn't add up. That's correct, and I think that that error was repeated from the government sentencing memorandum in opposition. So you're saying that it was concurrent all along in the first round as well? No. So he got that 120 and effect a reduction right there by it being made consecutive. Well, not exactly. I mean, the judge ran the 108 for count three. So he got 120 plus and then? But I think that's what's important, right? So the judge didn't decide to continue to run count four consecutive as it did the first time. The court certainly could have done that. The court didn't do that. The court chose to run count three, the drug count, partially current and partially consecutive. So are you saying that in one sense your argument, even if it were valid, is an artifact of the way the judge decided to structure it, that he could have come out exactly the same sentence in terms of number of months just by manipulating the consecutive versus concurrent versus that sort of stuff? Right. I think it's important that the judge decided to do that on count three, the drug count, because that shows that the judge intended to give effect to 2D1.1. And that provision has been subsequently reduced by Amendment 782. Have you thought about the possibility that any ruling we provide on this appeal, whether it will help or hurt the 2055 on the error that you've acknowledged and I suspect the AUSA will acknowledge as an error? I mean, maybe you haven't worked through it, but you might let us know by letter, because one question is whether this is a good idea. I don't know. I haven't worked through it in my head. But what I'm asking myself as I sit here is this is very strange. There's just one error after another in this case. And that seems very promising from the perspective of 2255. And are we now going to make it harder to undo the errors by what we do here or are we going to make it easier to undo the errors by what we do here? So that would be something I have no sense for, but I'd be curious if you do. I did think about it when preparing for this case, and I was very uncertain how to answer the court's second question about whether there was a prejudicial error, because I don't want to commit one way or the other, because I don't know how the court is going to end up defining applicable guideline range. I also do not want to say something that would affect or prohibit him from filing the 2255 and succeeding on that. I haven't, as I was thinking through, come up with anything that I am saying that would hurt his 2255. Okay. I'm hopeful that that's true. Proceed. I'm aware, and Mr. Fowler acknowledges there's a whole line of cases from this court, McLean and all of those cases that acknowledge that the total, the applicable guideline range case law says that you apply 1B1.1A in its entirety, but I think all of those cases are distinguishable from what we have here, because all of those cases were intending to define what applicable guideline range was in relation to the mandatory minimum and to the guideline range for the career offender. Here we've got the opposite problem. We've got counts that were capped with the statutory maximum. So I have found no cases directly on point to say that the applicable guideline range is before or after the statutory caps and how the court imposed the sentence here. So I have not found, also, any case from this court that's- Because the guts of the problem is that without the statutory maximum, the guideline range on the robbery-murder is tremendous and would wipe everything out. You'd have no case at all. But because the statutory caps were applied, then you want the applicable guideline range to start looking elsewhere, and the only place it can look to is the drug gang. Right, because I think that the court, when it was imposing sentence, was required to look at what it statutorily could impose, and so it had to break out the sentences for each count. Of course, this is where the grouping, quote, error comes in, that at least if Judge Sutton was arguing the case from the beginning, then you would have had a strong case. But we've got to look at what the district court did, not what it might have done. That's correct. We are sort of in that position. I reserve the rest of my time for rebuttal. We'll have your time for rebuttal. May it please the Court, Noah P. Hood, Assistant United States Attorney for the Northern District of Ohio, Toledo Division, appearing on behalf of the plaintiff, E.P. Lee, United States of America. Your Honors, this court should affirm the district court's decision to deny the motion to reduce sentence under 3582C2 because Mr. Fowler's guideline range, which was driven by 2E1.1, which then cross-referenced 2A1.1, remains totally unaffected by Amendment 782. Now, Your Honors, I'm prepared to answer each of the three questions that the court submitted on July 20th in whatever order the court would prefer, though I think it makes the most sense to start with the first question regarding the grouping. Regarding question one, the question that the court submitted was, did the court correctly group the drug offense, count three, with the remaining three offenses, substantive RICO, which was count one, RICO conspiracy, which was count two, and the firearms conspiracy under 924 subsection O? The short answer is yes. The longer answer is even if it had grouped the offenses in error. The short answer there was an error. Excuse me. The short answer is there was not an error. Yes, they were correctly grouped. Okay. But even if there had been an error. Well, explain why there was no error. I mean, if you're going to do the long answer, it's going to go to why there's no error, not to the next point, an alternative. Yes, they were correctly grouped. And in understanding that, it's important to understand the nature of the offenses here. We've got four separate counts that Mr. Fowler was charged with, substantive RICO, RICO conspiracy, drug conspiracy, and then the firearms conspiracy. Now, this court has already kind of laid out in Mr. Fowler's previous appeals how those broke down. The district court acknowledged that he was convicted on the four predicate acts for count one, the substantive RICO count. And those four predicate acts are also spelled out in the Sixth Circuit's previous opinions, Fowler 1 and Fowler 2. The specific pinpoint citation for Fowler 2 is page 495. For Fowler 1, that's spelled out at page 420. Specifically, those predicate acts are conspiracy to distribute drugs, aiding in the murder of Charles Hurst, robbery of Charles Hurst, which then resulted in his death, and then extortion of Charles Hurst while collecting a debt. It's important to understand that those are the four predicate acts that we're dealing with. And in Fowler 1, the Sixth Circuit acknowledged that all of these acts had to do with Mr. Fowler's relation to the Outlaw Motorcycle Club. He's not charged individually with murder. He's not charged individually with robbery. Rather, it's part of his role as part of this motorcycle gang. He was doing this while he was a probate, a neophyte for the Outlaws Motorcycle Club, and it's important to understand that. In his first appeal, the court stated, quote, he acted with the intent of perpetuating OMC, Outlaw Motorcycle Club, as a criminal enterprise and thereby furthering all of its racketeering activities. Now, that's important. This is not a one-off murder, not a one-off robbery. So when you're – Cut to the chase. Are you saying, given the questions we've asked, forget the prior appeals? I mean, because the prior appeals don't help you much if there's embedded error. Okay, so if we were doing this all again from the beginning, would you have recommended it be done the same way? Your Honor, I would recommend starting with the guidelines and specifically going to the provision of the guidelines that discuss grouping. And in that, you would look at the 2009 – In other words, you would do it the same way. That's your theory. I'm saying you would still reach an offense level of 43 and a guideline range of life. And I can explain that. Specifically, you would look at Comment 2 and Comment 3 of Section 3D1.2 of the guidelines that discusses how they're grouped. Comment 2 – and again, these are commentaries in reference to the 2009 edition. Comment 2 discusses whether or not you have multiple victims, but Comment 3 discusses when you have a single criminal episode, which is the RICO case. Your Honor, here, when you're looking at the RICO guideline, 2E1.1, it says that the offense level is either going to be 19 or the highest of the predicate offenses. And specifically for the predicate offenses, it notes that murder or robbery resulting in death or extortion resulting in death references the murder guideline, 2A1.1. That's an important distinction for the purpose of grouping. It's 2E1.1 that is then cross-referencing 2A1.1. So we go through the process of calculating the guidelines with a clean slate. Start at 2E1.1 and then go, what is the highest of the predicate acts? The highest guideline under 2E1.1 sends you straight to 2A1.1 and you wind up with a 43. Now, let's assume for the sake of argument they were not correctly grouped. That in some alternative universe, you had the drug conspiracy as a separate group of offenses. You still go through the process that is outlined in Chapter 3 of the Guidelines Manual, which is we calculate an offense level for each of the separate groups and you wind up with one single adjusted offense level. You don't wind up with a different offense level and different guideline range for each count of conviction. Rather, they all go through this process of winnowing down until you reach one final number and one final range. If I can stop you there, it's basically your statement that you have an applicable guideline range and only after that do you look around at the statute and see whether you can actually get to some part of that applicable guideline range. That's absolutely right, Your Honor. You start from the front of the manual and work your way to the back and once you reach the end, you determine, is this capped by the statutory maximum? You don't do that midway. Aren't there some cases where we say that when there is a statutory maximum or a statutory minimum, then it truncates the range and the applicable range is sometimes even a point. Suppose the guideline range is only seven years and you have a mandatory minimum of ten years. Don't we usually write that at least as the guideline range is ten years because of the minimum? Same way on the high end. Your Honor, I would take those as two separate issues. So if you're dealing with a statutory maximum imposing a cap, you still go through the process of calculating the guidelines. Say someone's guideline is 210 to 262, but they're charged with, say, felon in possession of a firearm, which has a maximum of ten years in a normal situation. The guidelines would just be ten years. You get the range first and then if it's capped by statutory... Yes. Your Honor, going back to the example I was talking about before, which is if they were in separate groups, one for the drug conspiracy and one for the other three counts, you would still go through this process. And say we did go through the process of calculating what specifically the guideline range would be for each of these counts. For the first group, which would contain counts one, two, and four, you still wind up with an offense level of 43. So we'll set that aside. Offense level 43 for group one. Then we go through and do the process for group two, which would be the drug conspiracy. And we go to, say, 2D1.1. Now, in this situation, both parties appear to agree that back in 2009, the offense level, had they used 2D1.1, and I'll point out, there is no reference to 2D1.1 in any of the transcripts or in the PSR. But had they used that, you wind up at an offense level for 34. Again, this is for group two, which would then be reduced to 32 under Amendment 782. And then you go to the next part of the guideline, specifically under Section 3D1.4, which discusses the units. How do you determine what the adjusted offense level would be when you have multiple counts of conviction? Under the units, anything that is nine levels apart or further, it's a wash. You don't add any units. You don't add any levels on. And I'll point out, if you did, it would only serve to increase the offense level, not decrease it. It's always in a defendant's benefit to have offenses grouped into the smallest group possible, because if they're grouped into multiple groups, the units have a tendency to marginally increase the ultimate adjusted offense level. But if we went through this process, it would either be a 34 or a 32 with Amendment 782 applied, and you end up resulting in an offense level of 43 at the end, even if they were in separate groups, which goes back to the longer answer to my question, which is, yes, the court got it right, but even if it hadn't, even if there was an error, it's an error in the process, not the product. Let me stop you there. So you're saying that if you ungrouped, you would have 43 on the robbery-murder. You agree that the drug part would be this lower amount and that would have been reduced, but your argument then has to rest on the fact that the 43 would give you this enormous range that would never get reduced. Yes, and, Your Honor, I would just declare— That you don't apply the statutory cap. That's the real guts that underlies all of it. That's right, and to be clear, Your Honor, these two offense levels that we have ultimately wind up in one offense level when you go through Chapter 3. You don't wind up with two offense levels and two separate guideline range. That has no basis in the Guidelines Manual whatsoever. That's why I understand that it's the cap issue that may drive it. Go ahead. I'll point out, in Chapter 5 of the Guidelines, specifically Chapter 5, Part A, and this is in Comment 2 in the 2009 Manual, anything that is offense level more than 43, you just treat as a 43. It maxes out right there. And so then the next step, the final step in this process, you go to 5G1.2, Sentencing on Multiple Counts of Conviction. And in a situation where, yes, there is a statutory maximum for RICO, but there is up to life for Counts 3 and Counts 4, the guideline, the offense level, the adjusted offense level is for the total package, everything that's in the indictment. We don't parse it out. That has no basis in the guidelines. So at that point, you say that because the drug statute could authorize going up enough to cover the range, but then doesn't that make that last bit of it the drug applicable guideline range? Your Honor, there's one guideline range for the total package. That's how the guidelines are set up in the first place, and I think that's a fundamental... I understand, but then 3582 asks us, was the applicable guideline range reduced? I guess you're saying it can't be reduced because it's still driven to the highest level by the murderer. That's right, specifically the RICO, which references the murderer. That's what's driving this train, and whether or not you have it in separate groups, you wind up at a 43 at the end. The total adjusted offense level at the end is a 43. So let me make sure. I'm not sure I've gotten all of this, but let's say, first of all, it's possible you're right. So, in other words, there were no errors or, at a minimum, no prejudicial errors. That's certainly a possibility. We'll hear from your friend on the other side. Do you agree with her that if there were errors, the only solution is 2255? Your section 3582 gives the court limited authority to reduce sentence. The short answer is, no, you would not be, if there were errors in reaching the offense levels... There were grouping errors, so separate and apart from this particular appeal, the only solution is 2055. If that's a solution at all, but yes. Well, yeah, I know you don't agree. I've been listening to you for 12 minutes. Yeah, I understand you don't think there's an error, but okay. Right. Your Honors, and quite predictably, our answer to question two is, was there a reasonable probability of a different sentence absent this result? Again, our position is that there was no error, but even if there was, the court made the error in reaching the right results. In Melina Martinez, the defendant was sentenced to the low end of an incorrect guideline range. Here, the court sentenced Mr. Fowler, the first go-around, to just over 30 years, and the second go-around to just under 30 years, taking into account his time imprisonment and the fact that he was teaching Spanish classes, taking that into account. But still, it's not necessarily being driven by the guideline range, and that's specifically identified in the re-sentencing transcript at page ID 4429 and 4430. Let me say just a little bit about, if we get to the substance of this abuse of discretion, your adversary said she'd rely on her brief, but she seemed to say, correct me if I'm wrong on the record, that the judge didn't even know or think about the fact that he had previously said he'd been a good guy in prison, and then he didn't apply it. Of course, he was the same judge. Did you read the record? I don't know if you were there. Did the judge understand that he had previously thought this guy had a good record in prison? Yeah. Sorry for stepping on your question. I'm finished. Your Honor, I've read the transcript. I was not there personally. The short answer is the judge already took that into account during the re-sentencing, and it's stated as much on the record, saying, I'm taking into account your good behavior in prison. As you said before, your adversary seems to say the record looks like he forgot all of that and just treated him like any other person. Your Honor, there's no support for that in the record. In fact, the record says— He was the same physical judge, correct? That's correct. Your Honor, in closing, I would note, it's important to note that Mr. Fowler suggests or even argues that the court used or should use multiple guideline ranges for different counts, and that's identified in page 10, page 19, pages 23 through 27. Your Honor, that's simply inaccurate. That's not how the guidelines work, and had the court done that, that definitely would have been an error. Rather, this court should look—if I may just finish my statement. I see my time is up. Rather, the court should look at the order that is currently on appeal, specifically document 2253 at page ID 7212, where the court said the offense level was 43, the guideline range was life, that does not change the result of 782, and for that reason, the court should affirm. Thank you very much. Counsel? Ms. Fadanaro, you have your time for rebuttal. Thank you. Just briefly, I will explain why I thought there was a grouping error, and then we'll move really to the issue at hand, I think. 2E1.1 is the RICO provision, and it says that you set the base offense level at 19 or an offense level applicable to the underlying racketeering activity, whichever is greater. However, Comment Note 1 says when there's more than one underlying offense, you treat each underlying offense as a separate count of conviction for the purposes of figuring out the base offense level, and then you apply Chapter 3. Chapter 3, the grouping rules, 1.12d, would normally allow for underlying racketeering activity to be grouped because the behavior was ongoing and continuous in nature. However, 3D1.2 specifically excludes murder, robbery, and extortion from the grouping. So I do think that there was an error. The government argues that there was no mention of 2D1.1 at the resentencing, while 2D1.1 was not specifically referenced. Defense counsel at page 4416 was detailing to the court that count 3, based on the amount of drugs, had a guideline range at that time of 34, which is a range of 151 to 188. Amendment 782 has reduced that range to a 32 for 121 to 151. While the district court in its order resentencing did not specifically mention 2D1.1, it is clear that the court relied on that. There was no other basis given for a 188-month sentence on count 3. Further, I would point out to this court that the unique circumstances in this case, the defense counsel was making... Let me just stop you there for one second. When you say that that happened to be just the number that he picked because it's the top of the range, so you're saying, in effect, an implicit reference, but in terms of the sentence that he gave, doesn't just the whole thing smell like the range is way up here and he's figuring out how much to give and he takes that 18 months off? Because the effective 108, he could have just as easily said, I'm going to depart downward to 108 and he'd have had the same result. I'm not sure I understand the court's question. I think that the court clearly gave effect to 2D1.1 in imposing the 188-month sentence. What the court did was said, I'm going to impose 188 months on count 3 and I'm going to run 108 of them consecutive and 80 of them concurrent. I think that the court clearly was thinking about 2D1.1. That was the only argument that was made about where the range should be on that count. Because his applicable guideline range for count 3 was based on a subsequent amendment, I'm sorry, 2D1.1 that was subsequently amended by 782, Mr. Fowler requests this court reverse the district court's denial of his motion for resentencing and remand for further proceedings. Thank you. That case will be submitted and the clerk may adjourn court.